UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL LOVE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ROYAL PACIFIC MOTEL,<br><br>　　　　Defendant. | Case No. 20-cv-07308-JCS<br><br>**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 20 |

## I. INTRODUCTION

Plaintiff Samuel Love brings this action against Defendant Royal Pacific Motel ("RPM"), which operates a hotel in San Francisco. Love alleges that RPM's reservation website does not reasonably identify and describe accessible features of the hotel, in violation of federal and California law. Love alleges that this failure prevents individuals with disabilities from assessing whether the hotel meets their accessibility needs. RPM brings a Motion to Dismiss First Amended Complaint ("Motion") for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court finds the Motion is suitable for determination without oral argument and therefore vacates the Motion hearing set for July 16, 2021. The Case Management Conference set for the same date is also vacated. For the reasons discussed below, RPM's Motion is GRANTED.[1]

## II. BACKGROUND

Because a plaintiff's factual allegations are generally taken as true in resolving a motion to dismiss under Rule 12(b)(6), this order summarizes Love's allegations as if true. Nothing in this

---

[1] The parties have consented to the jurisdiction of a magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

order should be construed as resolving any issue of fact that might have been disputed at a later stage of the case if it had proceeded beyond the present motion.

### A. Allegations of the Complaint and Facts Subject to Judicial Notice

Love is a paraplegic. First Amended Complaint ("FAC," dkt. 15) ¶ 1. He is "substantially limited in his ability to walk" and "uses a wheelchair for mobility." *Id.* Love's disability creates challenges for him to "stand, ambulate, reach objects mounted at heights above his shoulders, transfer from his chair to other equipment, and maneuver around fixed objects." *Id.* ¶ 12. Because of these challenges, Love requires an accessible guestroom when he travels. *Id.* ¶ 13. Love also requires information about the "accessible features in hotel rooms" at the time of booking so that "he can confidently book these rooms and travel independently and safely." *Id.*

On or around September 20, 2020, Love accessed the Royal Pacific Motor Inn website to make a reservation for his trip to San Francisco in February 2021. *Id.* ¶¶ 14–15. RPM owns and operates the Royal Pacific Motor Inn. *Id.* ¶ 2. The website is the "official online reservation system for this hotel." *Id.* ¶ 16.

Love alleges that "while this hotel provides some information about its mobility accessible features," it does not provide all of the information required by the Americans with Disabilities Act ("ADA"). *Id.* ¶ 17. He states that the website "identif[ies] accessible features," which include "Accessible barrier-free guest room," "Accessible public entrance," "Accessible route from the hotel's accessible entrance to all available rooms," "Public Areas accessible and barrier-free for physically challenged individuals," and "Rooms accessible and barrier-free to wheelchairs." *Id.* ¶¶ 17–18. Love alleges that this list does not include sufficient description or details and amounts to the hotel "slap[ping] the label 'accessible' on all of its public spaces." *Id.* ¶ 18. Love contends that claiming an amenity or space is "accessible" is merely "a conclusion or opinion" and is not a statement that persons with disabilities can use to make judgments about whether a room is suitable for their needs. *Id.* ¶¶ 19–20.

As to the specific guestrooms, Love acknowledges the information provided is "helpful" and may comply with the ADA, but characterizes it as a "meager offering of actual details." *Id.* ¶ 23. For example, the website specifies "Transfer shower with folding shower seat and shower

2

bars," and "Tubs with shower bars and seat available on request," but Love contends the website should also specify whether there is a "hand-held shower spray unit." *Id.* ¶ 29. Overall, Love alleges that the accessibility information listed on the website "is nowhere near enough to permit a profoundly disabled wheelchair user to have any confidence or come to any conclusions about whether any given hotel room works for him or her." *Id.* ¶ 19.

Love states that key pieces of information are missing. *See id.* ¶¶ 24–30. For example, Love states that he could not determine if he could fit his wheelchair into the room or if the toilets in accessible rooms have sufficient knee clearance and insulation-wrapped plumbing. *Id.* ¶¶ 25, 27. Love also details information he needs about entrance, bed, and restroom measurements that he states are currently unavailable on the website. *See id.* ¶¶ 25–28. Although Love states that he "does not need an exhaustive list of accessibility features," he asserts that the website needs to provide enough detail "permit him to independently assess that the room works for him." *Id.* ¶¶ 24, 30.

Love alleges that the missing information barred him from booking a guestroom. *See id.* ¶ 32. Love travels to San Francisco regularly, in part for his work as an ADA tester, and plans to use this reservation website in the future. *See id.* ¶¶ 34, 36.

Love asserts two causes of action against RPM: (1) Violation of the ADA (42 U.S.C. § 12101 *et seq.*); and (2) Violation of the Unruh Civil Rights Act (Cal Civ. Code §§ 51–53). *See id.* ¶¶ 40–47. Love seeks injunctive relief and attorneys' fees under the ADA and the Unruh Act, as well as damages under the Unruh Act. *See id.* at 13 (prayer).

RPM requests judicial notice of screenshots of its reservations website describing certain accessibility features available, a list of other cases Love has brought asserting disability access violations, a consent decree in a case brought by the United States against Hilton Worldwide, Inc., and dismissal orders and other court filings in similar ADA cases. *See* Request for Judicial Notice ("RJN," dkt. 20-2). The RPM website screenshots are subject to judicial notice under the doctrine of incorporation by reference. The consent decree, dismissal orders, and other court filings are subject to judicial notice as matters of the public record not reasonably subject to dispute. *See* Fed. R. Evid. 201(b)(2). The Court declines to take judicial notice of the list of cases in which

Love is a plaintiff—while that list is derived from public records, it is not relevant to the Court's resolution of the present motion.

### B. Relevant Statutes

#### 1. The ADA

Title III of the ADA prohibits discrimination by the "failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities," unless providing the "modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(B)(2)(A)(ii).

Specifically, the ADA's "Reservations Rule" states that a public place of lodging shall "modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms." 28 C.F.R. § 36.302(e)(1)(i). These places of lodging must, "with respect to reservations made by any means . . . identify and describe accessible features in the hotels and guest rooms offered through its reservation service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs." 28 C.F.R. § 36.302(e)(1).

To prevail on an ADA claim, a plaintiff must show that: (1) they are disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied access to public accommodations by the defendant because of the plaintiff's disability. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). The first and second elements are satisfied because there is no dispute among the parties that Love is disabled or that the Royal Pacific Motor Inn is a place of accommodation under this statute. *See generally* FAC; Motion (dkt. 20). The third element can be satisfied if a plaintiff shows a violation of regulatory accessibility standards. *See Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 945 (9th Cir. 2011). RPM does not dispute that a violation of the Reservations Rule can support a claim.

4

1  A plaintiff may seek injunctive relief and attorney's fees under the ADA.  42 U.S.C. §§ 12188(a)(2), 12205.

### 2. The Unruh Civil Rights Act

The Unruh Act states in relevant part that "[a]ll persons within the jurisdiction of [California] are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal. Civ. Code § 51(b).  A violation of the ADA is a per se violation of the Unruh Act.  *Id.* § 51(f).  Like the ADA, the Unruh Act allows plaintiffs to seek injunctive relief and attorney's fees.  *Id.* § 52(c)(3).  The Unruh Act also allows plaintiffs to recover "up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars."  *Id.* § 52(a).  A plaintiff "need not prove she suffered actual damages to recover the independent statutory damages of $4,000."  *Molski*, 481 F.3d at 731 (citing *Botosan v. Paul McNally Realty*, 216 F.3d 827, 835 (9th Cir. 2000)).

### C.  Motion to Dismiss

RPM moves to dismiss Love's complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Motion at 1.  RPM argues that Love's ADA claim fails as a matter of law, and that his Unruh Act claim fails because it is dependent on the ADA claim and because the Court should decline to exercise supplemental jurisdiction over the claim.

### 1.  Arguments Regarding Love's ADA Claim

RPM argues primarily that its website "complies with the Reservations Rule."  Motion at 6.  RPM contends that its website provides more accessibility information than is required by the ADA, relying in part on 2010 Department of Justice ("DOJ") ADA guidance included as an appendix to the Code of Federal Regulations.  *See* Motion at 7–8 (citing 28 C.F.R. Pt. 36, App. A "Guidance on Revisions to ADA regulation on nondiscrimination on the Basis of Disability by Public Accommodations and Commercial Facilities" (the "2010 Guidance")).  The 2010 Guidance states that for hotels built in compliance with the 1991 ADA Standards for Accessible Design[2] "it

---

[2] Versions of the Standards for Accessible Design were promulgated by the DOJ in 1991 and 2010, based on the ADA Accessibility Guidelines ("ADAAG") published by the U.S. Access

may be sufficient to specify that the hotel is accessible, and for each accessible room, describe the general type of room . . . the size and number of beds . . . the type of accessible bathing facility . . . and communications features available in the room." 2010 Guidance.

RPM argues that its website "provides more information about the Hotel's accessibility" than detailed in the 2010 Guidance because it provides accessible guest rooms and routes of travel to its common areas and accessible guestrooms. Motion at 7–9. RPM also points to statements on their website that they provide "Handrails by toilets" and a "Roll-in transfer shower or tub with handrails." *Id.* at 18. While RPM agrees that its list of accommodations is not all-inclusive, it stresses that the "DOJ clearly did not intend for a hotel to provide that level of detail" and that in his complaint, Love "cherry picks a subset of [the] ADA standards that he has determined must be repeated" on the website while arbitrarily ignoring other standards. *Id.* at 14–15.

RPM also argues that its website satisfies the ADA regulations—which allow for alternative means of access—because it "invites guests to contact the hotel with any questions." *Id.* at 9. RPM notes that the 2010 Guidance acknowledges that after "'reservations are made . . . many individuals with disabilities may wish to contact the hotel or reservations service for more detailed information . . . such as the specific layout of the room and bathroom, shower design, grab-bar locations, and other amenities." Reply (dkt. 23) at 11 (quoting the 2010 Guidance) (alterations in original).

Love counters that the DOJ has not created any specific list of mandatory information. *See* Opposition (dkt. 22) at 3. Instead, Love argues that the DOJ has stated that it "cannot specify what information must be included in every instance" and that "specific information concerning accessibility features is essential." *Id.* at 4 (quoting the 2010 Guidance). Love contends that because the ADA is a civil rights mandate, the regulations "should be construed broadly and liberally." *Id.* at 14. Love states that merely labeling a room as "accessible," cannot be said to "describe accessible features . . . in enough detail" for individuals to make assessments about the room. *Id.* at 5, 8. Love also argues that a telephone line does not meet ADA standards because

---

Board. The Standards for Accessible Design include detailed building codes, and are applicable to varying degrees based on dates of construction or renovation.

the Reservations Rule requires that "persons with disabilities have the opportunity to make reservations 'in the same manner'" as other guests. *Id.* at 6.

RPM outlines several previous judicial decisions that it claims support its argument. *See* Motion at 9. For example, in *Barnes v. Marriott Hotel Services., Inc.*, the court found that the defendant's reservation website's description, which included statements such as "32 inch wide openings" for guestrooms and "Accessible Room Features" descriptions, was compliant with the 2010 DOJ guidance and therefore was not in violation of the Reservations Rule. *Barnes v. Marriott Hotel Services., Inc.*, No. 15-cv-01409-HRL, 2017 U.S. Dist. LEXIS 22588 at *9–10 (N.D. Cal. Feb. 16, 2017). RPM also cites a consent decree from *United States v. Hilton Worldwide Inc.*, in which the DOJ alleged "that the defendant's online reservations system did not 'accurately reflect the inventory of accessible types of rooms and amenities available'" at hotel properties. Motion at 20–21 (quoting Consent Decree, *United States v. Hilton Worldwide Inc.*, No. 10-1924, ECF Doc. No. 5 (D.D.C. Nov. 29, 2010) ("Hilton Consent Decree")). The consent decree required the defendant to ensure that its reservation system identify a list of amenities, including "number of beds," "size of beds" and "roll-in shower or accessible tub." Hilton Consent Decree ¶ 25. RPM states that these specifications meet the DOJ's 2010 Guidance and that its own website goes beyond the minimum requirements of the decree in *Hilton Worldwide*. *See* Motion at 22.

Love counters that while the complaints in decisions cited by RPM address questions on the scope of the Reservations Rule, those cases were dismissed on other grounds, such as failure to establish standing based on intent to return to the hotel at issue. Opposition at 16–23. For instance, Love argues that *Barnes* was dismissed for lack of standing and that the court conducted minimal analysis of the Reservations Rule issue because "[i]t was not a necessary part of the holding or the decision." *Id.* at 18. Love also states that the decisions cited by RPM are from district courts and are not binding precedent. *Id.* at 16.

RPM also argues that its use of the term "accessible" follows the "the ADA's uniform national design standards" and is a "legal term of art under the ADA," not just a conclusory word or opinion. Motion at 13–14, 18–20 & n.5. In its Reply, RPM goes further to highlight that

7

"accessible" has a specific definition included in the Standards for Accessible Design and argues that this same definition should apply to its use on the website. *See* Reply at 9–10. Even so, RPM contends that its website goes beyond the minimum labeling of "accessibility" and that "specific elements of the Hotel's design meet [the] national uniform standards for accessibility." Motion at 17.

Love responds to RPM's argument indirectly by outlining what he believes would be sufficient information to allow individuals to reasonably make decisions. Opposition at 16. These descriptions include a "modest amount of information" about the doors, bed, toilet, sink, and shower. *Id.* at 10–13. Love contends that other nearby hotels have met this higher standard, including the Hotel Fusion in San Francisco, and that these descriptions strike the correct balance of information needed on a reservation site. *Id.* at 13. Love also states that the Comfort Inn in Sunnyvale goes above and beyond ADA standards on its reservation website by detailing floor and hotel corridor widths, information about pool and spa accessibility, and even power outlets. *Id.* at 13–14.

### 2. Arguments Regarding Love's Unruh Act Claim

Defendant asserts Love's claim under the Unruh Act is "dependent" on Love's ADA claim and therefore fails as a matter of law because the ADA claim fails to state a claim. Motion at 23. In the alternative, Defendant contends the Court should decline to exercise supplemental jurisdiction over Love's state law claim if it dismisses the ADA claim. Id.

### III. ANALYSIS

#### A. Legal Standards

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a claimant's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A pleading must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the claimant must plead sufficient factual allegations to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

### B. Love Fails to State a Claim Under the ADA

As discussed above, the Reservations Rule of the ADA states that a public place of lodging shall "modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guestrooms during the same hours and in the same manner as individuals who do not need accessible rooms." 28 C.F.R. § 36.302(e)(1)(i). These places of lodging must, "with respect to reservations made by any means . . . identify and describe accessible features in the hotels and guestrooms offered through its reservation service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guestroom meets his or her accessibility needs." 28 C.F.R. § 36.302(e)(1).

While the rule itself provides no specifics on implementation, the DOJ provides more details in its Appendix A:

9

[The requirement] to identify and describe the accessible features in the hotels and guest rooms . . . is essential to ensure that individuals with disabilities receive the information they need to benefit from the services offered by the place of lodging. As a practical matter, a public accommodation's designation of a guest room as "accessible" will not ensure necessarily that the room complies with all of the 1991 Standards. In older facilities subject to barrier removal requirements, strict compliance with the 1991 Standards is not required. Instead, public accommodations must remove barriers to the extent that it is readily achievable to do so.

Further, hotel rooms that are in full compliance with current standards may differ, and individuals with disabilities must be able to ascertain which features—in new and existing facilities—are included in the hotel's accessible guest rooms. For example, under certain circumstances, an accessible hotel bathroom may meet accessibility requirements with either a bathtub or a roll-in shower. The presence or absence of particular accessible features such as these may be the difference between a room that is usable by a particular person with a disability and one that is not

. . .

The Department recognizes that a reservations system is not intended to be an accessibility survey. However, specific information concerning accessibility features is essential to travelers with disabilities. Because of the wide variations in the level of accessibility that travelers will encounter, the Department cannot specify what information must be included in every instance. For hotels that were built in compliance with the 1991 Standards, it may be sufficient to specify that the hotel is accessible and, for each accessible room, to describe the general type of room (e.g., deluxe executive suite), the size and number of beds (e.g., two queen beds), the type of accessible bathing facility (e.g., roll-in shower), and communications features available in the room (e.g., alarms and visual notification devices). Based on that information, many individuals with disabilities will be comfortable making reservations.

For older hotels with limited accessibility features, information about the hotel should include, at a minimum, information about accessible entrances to the hotel, the path of travel to guest check-in and other essential services, and the accessible route to the accessible room or rooms. In addition to the room information described above, these hotels should provide information about important features that do not comply with the 1991 Standards. For example, if the door to the "accessible" room or bathroom is narrower than required, this information should be included (e.g., door to guest room measures 30 inches clear). This width may not meet current standards but may be

10

> adequate for some wheelchair users who use narrower chairs. In many cases, older hotels provide services through alternatives to barrier removal, for example, by providing check-in or concierge services at a different, accessible location. Reservations services for these entities should include this information and provide a way for guests to contact the appropriate hotel employee for additional information.
>
> . . .
>
> As commenters representing hotels have described, once reservations are made, some hotels may wish to contact the guest to offer additional information and services. Or, many individuals with disabilities may wish to contact the hotel or reservations service for more detailed information. At that point, trained staff (including staff located on-site at the hotel and staff located off-site at a reservations center) should be available to provide additional information such as the specific layout of the room and bathroom, shower design, grab-bar locations, and other amenities available (e.g., bathtub bench).

2010 Guidance. That appendix also states that "basic nondiscrimination principles mandate that individuals with disabilities should be able to reserve hotel rooms with the same efficiency, immediacy, and convenience of those who do not need accessible guestrooms." *Id.* This "administrative guidance on ADA compliance is entitled to deference" by courts. *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 904 (9th Cir. 2019); *see also Bragdon v. Abbott*, 524 U.S. 624, 646 (1998).

The Ninth Circuit has not yet addressed the level of detail required by the Reservations Rule, but the overwhelming majority of recent district court decisions in this circuit have rejected claims similar to those presented here, including other cases in which Love challenged Marriott reservation websites similar to the one used by RPM. *See, e.g.*, *Love v. Ashford San Francisco II LP*, No. 20-cv-08458-EMC, 2021 WL 1428372, at *4–5 (N.D. Cal. Apr. 15, 2021) (collecting other district court decisions dismissing such claims); *but see Garcia v. Patel & Joshi Hosp. Corp.*, No. EDCV 20-2666 JGB (PVCx), 2021 U.S. Dist. LEXIS 67028 (C.D. Cal. Mar. 19, 2021) (denying a motion to dismiss similar claims). While the question may be closer than some decisions have suggested, this Court follows the consensus view and holds the accessibility information included on RPM's website sufficient as a matter of law.

Love has not alleged or argued that any physical aspect of the hotel at issue violates applicable ADA building standards, under either the 1991 or 2010 Standards for Accessible

11

1  Design.  The website includes information that the 2010 Guidance states "may be sufficient" for
2  hotels built in compliance with those standards: it indicates that certain rooms and common spaces
3  are "accessible," describes the "general type of room" and "the size and number of beds" ("three
4  Accessible Guest Rooms with King size beds and one with a Queen size bed"), and identifies "the
5  type of accessible bathing facility" ("Transfer shower with folding shower seat and shower bars"
6  and "Tubs with shower bars and seat available on request").  *See* 2010 Guidance; RJN Exs. 1, 2.
7  The information he alleges he was unable to determine from the website, *see* FAC ¶¶ 26–29, all of
8  which relates to mobility access, includes features specifically regulated by the Standards for
9  Accessible Design, like space to pull a wheelchair next to the bed and a toilet with a compliant
10 seat height and required grab bars, as well as information that the 2010 Guidance specifically
11 contemplates could be addressed in a post-reservation telephone call, like "shower design, grab-
12 bar locations, and other amenities available (e.g., bathtub bench)," *see* 2010 Guidance.

13 There is some tension within the 2010 Guidance, with aspects of it suggesting that the
14 information RPM provided is sufficient, while other portions could be read as disclaiming intent to
15 provide a clear rule—in particular, the acknowledgment that "the Department cannot specify what
16 information must be included in every instance," and the use of the word "may" to introduce
17 potentially sufficient information.  *See id.*  Ultimately, however, the Court agrees with RPM (and
18 the majority of decisions to addressing this issue) that requiring more information than RPM
19 provided here would contravene the guidance "that a reservations system is not intended to be an
20 accessibility survey."  *See id.*

21 Love characterizes the further information he seeks as "valuable information for
22 wheelchair-using patrons," Opposition at 14, but virtually all of the "numerous, highly technical
23 requirements" of the Standards for Accessible Design, *see id* at 10, are necessary to at least some
24 guests with disabilities, hence why they are required.  As Love acknowledges, listing compliance
25 with each of those requirements would be untenable.  Judge Ryu's conclusion that a guest can
26 presume a room advertised as "accessible" complies with at least the 1991 Standards for
27 Accessible Design unless otherwise specified, and that for such rooms the Reservation Rule
28 requires additional disclosure of only basic information identified in the 2010 Guidance like the

12

number of beds and type of bathing facility, strikes an appropriate balance to provide guests who have disabilities with relevant information without requiring an "accessibility survey" in the reservation system. *See Love v. Wildcats Owner LLC*, __ F. Supp. 3d __, No. 20-cv-08913-DMR, 2021 WL 1253739, at *6 (N.D. Cal. Apr. 5, 2021).[3] The DOJ's conclusion that "[b]ased on that information, many individuals with disabilities will be comfortable making reservations" is among the clearer portions of the 2010 Guidance, and is entitled to deference.

The minority view of *Patel & Joshi* identifies some weaknesses in RPM's position, including ambiguous portions of the 2010 Guidance and the fact that the Hilton Consent Decree predated regulatory adoption of the Reservations Rule, but it does not provide a satisfactory alternative standard. *See* 2021 U.S. Dist. LEXIS 67028, at *13–14. That case describes the "requested information about the accessibility of toilets or of clear floor space" as "sufficiently narrow and consistent with the kinds of information that the DOJ Guidance identifies," but does not explain why that particular information would be *required* under the 2010 Guidance, or what differentiates it from any other information that some hotel guests with disabilities might require. *See id.*

*Patel & Joshi* also discounted the defendant hotel's note that patrons could contact the front desk with questions not resolved by the description of amenities, holding that the invitation for such further inquiry "does little to support the Hotel's compliance with the Reservations Rule," *id.* at *14, but did not address the portion of the 2010 Guidance acknowledging that "many individuals with disabilities may wish to contact the hotel or reservations service for more detailed information . . . such as the specific layout of the room and bathroom, shower design, grab-bar locations, and other amenities available," *see* 2010 Guidance. Nor is a possibility that some patrons with disabilities might need to call the hotel for further information about their specific

---

[3] Again, there is tension on this point within the 2010 Guidance, which states that "a public accommodation's designation of a guest room as 'accessible' will not ensure necessarily that the room complies with all of the 1991 Standards." *See* 2010 Guidance. The Court understands that portion of the guidance as addressing the status quo before adoption of the Reservations Rule, and explaining the need for the Reservations Rule to require disclosures of such deviations. Of course, the inference that a room complies with the 1991 Standards for Accessible Design would be clearer if a hotel actually stated such compliance in the reservation system, but nothing in the relevant regulation or guidance calls for that specific disclosure.

13

needs clearly inconsistent with the regulatory requirement "to ensure that individuals with disabilities can make reservations for accessible guest rooms . . . in the same manner as individuals who do not need accessible rooms," 28 C.F.R. § 36.302(e)(1)(i), since some patrons who do not need accessible rooms might also need to call and inquire about their own specific needs—for example, whether a room has sufficient space to set up a crib for a child.

The question of what the Reservations Rule requires is a legal matter for the Court to decide, not a question of fact for a jury. A free-ranging, case-specific inquiry into what information a guest might reasonably need to make a reservation would invite the sort of inconsistency and uncertainty that the DOJ presumably sought to dispel by providing some degree of additional guidance as an appendix to the regulation. The Court therefore declines to enter into such an inquiry, as long as the reservation system identifies the facilities as accessible, has the basic information identified as potentially sufficient under the 2010 Guidance, discloses any deviations from the Standards for Accessible Design, and provides a mechanism for a patron to obtain additional information.

Accepting the DOJ's determination that "many individuals with disabilities will be comfortable making reservations" based on the type of information RPM provided here, *see* 2010 Guidance, the Court holds as a matter of law that such disclosures, coupled with a telephone number to call the hotel for inquiries about more specific needs, "[i]dentify and describe accessible features in the hotels and guest rooms . . . in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs," *see* 28 C.F.R. § 36.302(e)(1)(ii). Love therefore has not stated a claim for violation of that regulation and leave to amend would be futile. RPM's motion to dismiss Love's ADA claim is GRANTED.

**C. The Court Declines Supplemental Jurisdiction as to Love's Unruh Act Claim**

The only basis Love has asserted for this Court's subject matter jurisdiction over his state-law Unruh Act claim is supplemental jurisdiction under 28 U.S.C. § 1367. *See* FAC ¶ 5.[4] Under

---

[4] There is no indication, and no party has suggested, that this case falls within the Court's diversity jurisdiction under 28 U.S.C. § 1332.

14

subsection (c) of that statute, however, a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if," among other reasons, "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). The Court therefore declines to exercise supplemental jurisdiction over Love's Unruh Act claim after dismissing his ADA claim.[5]

## IV. CONCLUSION

For the foregoing reasons, RPM's Motion is GRANTED, Love's ADA claim is DISMISSED with prejudice, and Love's Unruh Act claim is DISMISSED for lack of jurisdiction. The Clerk shall enter judgment in favor of RPM and close the case.

**IT IS SO ORDERED.**

Dated: July 1, 2021

JOSEPH C. SPERO
Chief Magistrate Judge

---

[5] If Love had stated a claim sufficient to proceed under the ADA, the Court would exercise supplemental jurisdiction over his Unruh Act claim for the reasons stated in *Castillo-Antonio v. Hernandez*, No. 19-cv-00672-JCS, 2019 WL 2716289, at *6–9 (N.D. Cal. June 28, 2019).

15